UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HIJJI JARRETT,

        Movant,

                                       Case No. 1:13-CV-952
v.                                        (Criminal Case No. 1:06-CR-210-01)

UNITED STATES OF AMERICA,        HON. GORDON J. QUIST

        Respondent.
_____/

**OPINION**

On January 26, 2007, Movant Hijji Jarrett pled guilty to one count of conspiracy to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A)(i), and 846. On June 12, 2007, Jarrett was sentenced to 215 months' imprisonment. The judgment was entered on June 14, 2007, and an amended judgment was entered on June 26, 2007. (Case No. 1:06-CR-210-01, dkt. ## 199, 214.) Jarrett did not appeal his sentence.

Jarrett filed the instant Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence By a Person in Federal Custody on August 29, 2013. Pursuant to Rule 4(b) of the Rules Governing § 2255 Proceedings, the Court has examined Jarrett's Motion and the record of prior proceedings and concludes that Jarrett is not entitled to relief.

Jarrett's § 2255 Motion is subject to the one-year statute of limitations set forth in 28 U.S.C. § 2255(f). Generally, the limitations period runs from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The Sixth Circuit has held that when, as in this case, "a federal criminal defendant does not appeal to the court of appeals, the judgment becomes

final upon the expiration of the period in which the defendant could have appealed to the court of appeals, even when no notice of appeal was filed." *Sanchez-Castellano v. United States*, 358 F.3d 424, 427 (6th Cir. 2004). At the time Jarrett was sentenced, the period for filing an appeal was ten days.[1] *See id.* Therefore, Jarrett's conviction became final ten days after the amended judgment was entered on June 26, 2007. Jarrett's motion is thus untimely under § 2255(f)(1).

Pursuant to § 2255(f)(3), the one-year limitations period may also run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Although Jarrett does not cite § 2255(f)(3), he appears to rely on this provision because he cites the United States Supreme Court's recent decision in *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151(2013), as his sole basis for relief. In *Alleyne*, the Court overruled *Harris v. United States*, 536 U.S. 545, 122 S. Ct. 2406 (2002), holding that "[f]acts that increase [a] mandatory minimum sentence are . . . elements [of the offense] and must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 2158. *Alleyne* extended the holding in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348 (2000)—that any fact, other than the fact of a prior conviction, that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt—to facts that increase mandatory minimum sentences. *Alleyne*, 133 S. Ct. at 2158.

For purposes of determining whether § 2255(f)(3) applies to Jarrett's Motion, the Court assumes that *Alleyne* established a new constitutional right.[2] *See United States v. Reyes*, No. 11-

---

[1] Federal Rule of Appellate Procedure 4(b)(1), which governs the time for filing appeals in criminal cases, was amended in 2009 to increase the ten-day period to fourteen days.

[2] In his Motion, Jarrett also suggests that § 2255(f)(2) applies because *Harris* was an impediment to Jarrett's ability to file a § 2255 Motion. Contrary to Jarrett's contention, the Supreme Court's decision in *Harris* was not an "impediment . . . created by governmental action" that precluded Jarrett from filing a § 2255 Motion. 28 U.S.C. §

2

6234, 2013 WL 4042508, at *17 (E.D. Pa. Aug. 8, 2013) (stating that "*Alleyne* simply extended the principle established in *Apprendi*, and the Third Circuit has concluded that *Apprendi* itself announced a new rule of criminal procedure"); *United States v. Potter*, No. 7:13-7290-DCR, 2013 WL 3967960, at *2 (E.D. Ky. July 31, 2013) (assuming that "*Alleyne* recognized a new right" for purposes of determining the application of § 2255(f)(3)). The issue is thus whether *Alleyne* applies to cases on collateral review. The Supreme Court did not indicate in *Alleyne* that its holding applies retroactively to cases on collateral review, and the Sixth Circuit has not yet considered the issue.

Generally, "defendants seeking collateral relief may not rely on new rules of criminal procedure announced after their convictions have become final on direct appeal." *Valentine v. United States*, 488 F.3d 325, 328 (6th Cir. 2007) (citing *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2523 (2004)). There are two limited exceptions to this rule. "First, the bar does not apply to rules forbidding punishment 'of certain primary conduct [or to] rules prohibiting a certain category of punishment for a class of defendants because of their status or offense.'" *Beard v. Banks*, 542 U.S. 406, 416, 124 S. Ct. 2504, 2513 (2004) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 2953 (1989)) (alteration in original). Second, the rule of nonretroactivity does not apply to "watershed rules of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.* at 417, 124 S. Ct. at 2513 (internal quotation marks omitted).

The rule announced in *Alleyne* does not fall within the first exception because it does not forbid punishment at all. As for the second exception, the Supreme Court has observed:

---

2255(f)(2). *See Farmer v. United States*, Nos. 5:02-cr131-BO, 5:11-CV-642-BO, 2012 WL 5835524, at *1 n.1 (E.D.N.C. Nov. 16, 2012) ("The Court is not persuaded by Mr. Farmer's contention that judicial decisions prior to *Carachuri-Rosendo* constitute actions by the government that created an impediment to his ability to file a timely § 2255 petition . . . .").

> We have repeatedly emphasized the limited scope of the second *Teague* [*v. Lane*, 489 U.S. 288, 109 S. Ct. 1060 (1989)] exception, explaining that it is clearly meant to apply only to a small core of rules requiring observance of those procedures that . . . are implicit in the concept of ordered liberty. And, because any qualifying rule would be so central to an accurate determination of innocence or guilt [that it is] unlikely that many such components of basic due process have yet to emerge, it should come as no surprise that we have yet to find a new rule that falls under the second *Teague* exception.

*Id.* at 417, 124 S. Ct. at 2513–14 (internal quotation marks and citations omitted). The holding in *Alleyne* does not qualify as a new "watershed rule." Indeed, *Apprendi* itself did not create a "new watershed" rule within the second *Teague* exception. *Goode v. United States*, 305 F.3d 378, 384–85 (6th Cir. 2002) (concluding that *Apprendi* was not retroactively applicable to initial § 2255 motions because the *Apprendi* rule does not evoke the second *Teague* exception). Thus, there is no reason to conclude that *Alleyne* requires a different result. *See United States v. Sanders*, 247 F.3d 139, 148 (4th Cir. 2001) (noting that "a rule which merely shifts the fact-finding duties from an impartial judge to a jury clearly does not fall within the scope of the second *Teague* exception" (citing *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827 (1999)). This conclusion is in line with other district courts that have considered whether *Alleyne* falls within the second *Teague* exception. *See, e.g.*, *Reyes*, 2013 WL 4042508, at *19 (concluding that *Alleyne* is not retroactively applicable to cases on collateral review because, among other things, "the constitutional principles recognized in *Alleyne* are indistinguishable from those endorsed in *Apprendi*"); *Potter*, 2013 WL 3967960, at *3 (concluding that "the rule announced in *Alleyne* does not qualify as a watershed rule of criminal procedure" and noting that "[a] number of other district courts considering the matter have reached a similar conclusion"). Accordingly, Jarrett cannot claim the benefit of § 2255(f)(3) to render his Motion timely.[3]

---

[3] For purposes of this Opinion, the Court *assumes*, without deciding, that *Alleyne* would apply to Jarrett's circumstances. However, it is doubtful that *Alleyne* would apply to Jarrett's circumstances, even if the decision were retroactive, because Jarrett's guilty plea established the amount of heroin required to invoke the mandatory minimum

Moreover, *Alleyne* provides no basis for relief to Jarrett, even if it were retroactively applicable to Jarrett's § 2255 Motion, because Jarrett admitted to distributing at least one kilogram but less than three kilograms of heroin during the course of the conspiracy (Plea Tr. at 22–23, dkt. # 131)—the amount required to trigger the ten-year mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A)(i). *See United States v. Wimberly*, ___ F. App'x ___, 2013 WL 3214988, at *1 (6th Cir. June 26, 2013) (per curiam) ("[T]he holding of *Alleyne* is irrelevant to this case because Wimberly entered a guilty plea and specifically admitted discharging a firearm during the credit-union robbery . . . , the fact used to support his mandatory minimum sentence."). Moreover, the Court's adoption of the finding in the presentence report that Jarrett distributed at least one kilogram but less than three kilograms of heroin for purposes of determining Jarrett's base offense level did not run afoul of *Alleyne* because such finding was not used to increase the mandatory minimum, which was already imposed by virtue of Jarrett's plea admission. In other words, the Court's fact-finding did not "increas[e] the legally prescribed [sentencing] floor." *Alleyne*, 133 S. Ct. at 2161. Rather, the Court simply employed its sentencing discretion to impose a sentence within the range prescribed by statute. As to this aspect of sentencing, the Court in *Alleyne* stressed that its holding "does not mean that any fact that influences judicial discretion must be found by a jury." *Id.* at 2163. Thus, the Court confirmed that district judges continue to be free to find facts in sentencing that do not increase the statutory minimum or maximum punishment.

Having concluded that § 2255(f)(3) does not apply to Jarrett's case because *Alleyne* is not retroactive, the Court must next determine whether a certificate of appealability should issue under 28 U.S.C. § 2253(c)(2). A certificate should issue if the movant has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit has

---

ten-year sentence.

5

disapproved issuance of blanket denials of certificates of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Reasonable jurists could not find this Court's conclusion that § 2255(f)(3) does not apply to Jarrett's Motion debatable or wrong. Therefore, the Court will deny Jarrett a certificate of appealability.

For the foregoing reasons, the Court will dismiss Jarrett's § 2255 Motion and deny Jarrett a certificate of appealability.

A separate order will enter.


Dated: October 3, 2013                    /s/ Gordon J. Quist
                                          GORDON J. QUIST
                                          UNITED STATES DISTRICT JUDGE